UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM GENTRY FRISKE, JR.,

                Plaintiff,

v.

WARDEN SCUTT, *et. al.*,

                Defendants.

_____/

Case No. 07-13747

Gerald E. Rosen
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 25)
AND PLAINTIFF'S MOTION FOR JUDGMENT (Dkt. 51)**

## I.    PROCEDURAL HISTORY

Plaintiff, William Friske, Jr., a prisoner in the custody of the State of

Michigan, filed an amended complaint pursuant to 42 U.S.C. § 1983 against

defendants, alleging that they violated his constitutional rights.  (Dkt. 1, 6).[1]

Plaintiff complains that his legal materials were improperly confiscated and

_____

[1]  Plaintiff's complaint (Dkt. 1) was in the form of a motion for preliminary injunction.  On October 5, 2007, plaintiff filed a motion to amend the preliminary injunction, add parties, and assert his claims for retaliation. (Dkt. 6). His motion was treated, in part, as plaintiff's first amended complaint. *Id*.  Plaintiff was not permitted to add claims involving events that occurred after the initial filing of this suit. (Dkt. 54).  Plaintiff's currently pending motion to amend the complaint (Dkt. 59) is based on entirely different facts that occurred after the filing of his original complaint in this case and does not save him from the conclusions reached here.

destroyed by prison officials because they were "Uniform Commercial Code" materials. (Dkt. 1, p. 5). Plaintiff also complains of denial of his right to access the courts and retaliation by defendants based on his attempts to do so. (Dkt. 6). Plaintiff asserts that the legal documents confiscated by defendants and which they refused to mail were related to a legal action pending in Oakland County Circuit Court. (Dkt. 6). On December 5, 2007, District Judge Gerald E. Rosen referred this matter for all pretrial purposes to Magistrate Judge Virginia Morgan. (Dkt. 12). On January 14, 2008, this case was reassigned to the undersigned. (Dkt. 17).

On May 12, 2008, the Court ordered defendants to respond to plaintiff's amended complaint. (Dkt. 23). In lieu of filing an answer to the complaint, defendants filed a motion for summary judgment on June 4, 2008. (Dkt. 25). Defendants request summary judgment on plaintiff's request for injunctive relief and also assert that plaintiff fails to plead sufficient facts to support his due process and eighth amendment claims. *Id*. Plaintiff filed a response to defendants' motion on June 30, 2008. (Dkt. 36). On October 10, 2008, plaintiff filed a motion for judgment under Federal Rule of Civil Procedure 54(b). (Dkt. 51). Defendants filed a response to plaintiff's motion on October 20, 2008. (Dkt. 52). Plaintiff filed a reply on October 28, 2008. (Dkt. 53).

For the reasons set forth below, it is **RECOMMENDED** that defendants' motion for summary judgment on plaintiff's request for injunctive relief be **GRANTED**, that defendants' motion for summary judgment on plaintiff's due process claim be **GRANTED**, that plaintiff's eighth amendment claim be **DISMISSED**, and that plaintiff's motion for judgment be **DENIED**.

## II.    STATEMENT OF FACTS

A.    <u>Defendants' Motion for Summary Judgment</u>

Defendants summarize the factual background at issue in this case:

> In the Amended motion/complaint, plaintiff alleges that he was retaliated against by being placed in segregation for about three hours after being interviewed by [defendant] Barlow on September 18, 2007 regarding a grievance he filed on September 4, 2007 against ARUS Coggins.  Plaintiff alleges that while he was out of his cell, it was searched and officers removed his legal work, and all books and written materials, at the direction of [defendant] Barlow.  Plaintiff states that the following materials were seized from his cell:  American Juris Sovereign Handbook, International Sovereign Handbook, UCC study guide, Clerks Practices, Blacks Law Dictionary 6th and 7th Edition(s).  Plaintiff was transferred to the Florence Crane Facility on September 25, 2007.  Plaintiff claims that the Defendants violated his First, Fourth, Fifth, and Eighth Amendment rights by denying him the right to redress his grievances and by having an unqualified staff member confiscate his legal materials and law books in violation of the Injunction issued by *Judge Hood in Jones v MDOC, et al*, Case No. 05-cv-72817-DT.

In his motion, plaintiff seeks a return of his legal materials, including all blank documents, and damages because he could not file an action with the Sixth Circuit Court as a result of the confiscation of his documents.  Plaintiff wants $500.00 per document for each document seized; $1000 per document per day for his "Expatriation that was sent to all the officials of this country"; $1000 per document per day for "the copyright notice" which "are [to be?] registered with the State of Michigan"; and not less than $750,000 for denying his right of access to the courts and other rights.

According to defendants, on August 15, 2007, defendant Cooke confiscated several documents that plaintiff wanted copied.  (Dkt. 25, Ex. A).  The documents were UCC-type documents and appeared to violate PD 05.03.118, paragraph D-7, which prohibits a prisoner from possessing documents for the purpose of operating a business enterprise.  *Id*.  Defendant Cooke turned the documents over to defendant Barlow so that an administrative hearing could be held.  *Id*.  Defendant Barlow held the hearing on August 24, 2007.  (Dkt. 25, Ex. B).  He determined that the documents violated PD 05.03.118 because they could be used to facilitate or encourage criminal activity, or to operate a business enterprise from the prison facility.  *Id*.  They also appeared to be a type of UCC document that could be used to place a fraudulent lien on another person.  (Dkt. 25, Ex. C).

On September 4, 2007, plaintiff tried to send out a "Special Appearance Motion" through the expedited legal mail process; he alleges that another prison official told him that defendant Barlow said she could not send it out. Defendant Barlow attests that he never told staff not to mail plaintiff's legal mail. (Dkt. 25, Ex. B). Rather, staff were told to perform a perfunctory review to ensure that the mail did not violate MDOC policy. *Id.* Because plaintiff refused to allow staff to scan the mail as required by this policy, staff did not allow the mail to go via the expedited legal mail process. *Id.*

On September 18, 2007, staff searched plaintiff's property to see if he had contraband UCC-related forms. (Dkt. 25, Ex. B.) According to defendant Barlow, after the search, most of plaintiff's legal materials were returned to him and a "Notice of Intent to Conduct an Administrative Hearing" issued for the remaining contraband documents. *Id.* Defendants point out that, according to plaintiff, the documents retained pursuant to the Notice of Intent were "documents filed with the Secretary of State finance office: security agreement, copyright notice, finance statements, expatriation, my American Juris Sovereign H/B [handbook], International H/B [handbook], Redemption, Clerks Practices, UCC Study Guide." (Dkt. 25, citing Dkt. 6, pp. 38, 42).

After citing the four part balancing test for injunctive relief, defendants argue that plaintiff is not likely to succeed on the merits for several reasons. First, defendants argue that a prisoner's right of access to the courts applies only to direct appeals, habeas corpus applications, and civil rights claims, and the UCC documents plaintiff sought to file with Judge Warren do not fall within those parameters. Second, defendants argue that plaintiff's first amendment retaliation claim must fail because they can show that they would have taken the same action in the absence of any protected activity. According to defendants, they confiscated the UCC documents not because of the grievance, but because they were contraband. Defendants argue that both the Eastern District of Michigan, which enjoined the enforcement of PD 05.03.118(HH)(23), and the Western District Court of Michigan have held that MDOC could constitutionally prohibit prisoners from possessing or receiving in the mail certain UCC-related documents, and that using other provisions of PD 05.03.118 as a basis for rejecting or confiscating the documents was not unconstitutional. (Dkt. 25). Thus, according to defendants, plaintiff has no likelihood of success on the merits of his First Amendment access to courts claim, his Fourth Amendment search and seizure claim, or his retaliation claim.

Defendants also argue that plaintiff cannot show irreparable harm. According to defendants, plaintiff has alleged no injury that cannot be compensated by money damages. Finally, defendants argue that the issuance of injunctive relief would be harmful to defendants and the public, given the prevalent and well-documents abuse by prisoners by filing fraudulent liens.

Defendants also assert that plaintiff has cited no facts to support his due process and eighth amendment claims. To sustain a due process claim, according to defendants, plaintiff must plead and prove the inadequacy of state remedies designed to redress the alleged wrongs suffered. Defendants point out that plaintiff admits that hearings were conducted after his property was confiscated and the Sixth Circuit has held that the MDOC hearing procedures concerning suspected contraband are constitutionally sufficient. (Dkt. 25, citing, *Carlton v. Fassbender*, 199 US App LEXIS 17654 (6th Cir. 1993), *cert. denied*, 114 S.Ct. 993 (1994) (upholding Michigan's contraband hearing procedure against constitutional challenge by a prisoner)). Finally, defendants argue that plaintiff has not alleged any facts that would support a finding that confiscating contraband, fraudulent, UCC-type documents poses a serious risk to his health or safety sufficient to sustain an eighth amendment claim. Thus, according to defendants, plaintiff's due process and eighth amendment claims must fail.

B.    Plaintiff's Response to Defendants' Motion

Plaintiff responds to defendants' motion by attaching copies of the documents he claims were improperly confiscated.  (Dkt. 36, Ex. A).  These documents are (1) a UCC financing statement that has apparently been filed with the Michigan Secretary of State's office; (2) a document entitled "Asseveration and Declaration of Status"; (3) a copyright notice; and a (4) a security agreement. Plaintiff also provides letters from Circuit Judge Michael Warren of the Oakland County Circuit Court, to show that the UCC documents are part of an on-going litigation matter pending there.  (Dkt. 36, Ex. B).  In the April 2007 letter from Judge Warren, he notifies plaintiff that his documents were received, but are being returned to him because his "submission fails to present a legal issue which this Court has jurisdiction to address."  (Dkt. 36, Ex. B).  Judge Warren also wrote, in an opinion and order dated August 20, 2007, striking plaintiff's "Administrative Notice", noted that plaintiff apparently believes that he has "copyrighted himself" and has some "undefined rights under the Uniform Commercial Code with applicability to the instant criminal proceedings."  (Dkt. 36, Ex. B).  Plaintiff apparently filed a "special appearance" in the criminal proceeding before Judge Warren, in which he purported to "revoke...all signatures in the 6th Circuit Court of Pontiac, and the Oakland County Jail," among other things.  (Dkt. 36, Ex. F).

Plaintiff asserts that the documents show that he has a security interest in himself and has never possessed a fraudulent lien.  (Dkt. 36).  Plaintiff claims that he was attempting to respond to Judge Warren's notice when his response was improperly confiscated by defendants.  *Id*.  According to plaintiff, his first amendment rights were violated when defendant Cooke refused to copy his legal documents and by hindering his litigation, she caused him irreparable harm.  *Id*.  Plaintiff claims that he attempted to collaterally challenge his conviction and argues that to do so, he "must show a separation between myself, the flesh and blood man, and the ENS LEGIS, my private property."  (Dkt. 36, p. 5).  Plaintiff claims that defendants' actions have caused him to lose several "judicial motions" and his "UCC documents."   Plaintiff also claims that his cell was searched and he was transferred to another prison as retaliation for filing a grievance regarding the confiscation of his documents.  (Dkt. 36, pp. 7-8).

C.    Motion for Judgment

On October 10, 2008, plaintiff filed a motion for judgment.  Plaintiff states that defendants failed to respond to an order of the court (Dkt. 44) and failed to deny plaintiff's amended complaint and supplemental brief (Dkt. 39, 41).  Plaintiff argues that because of defendants' failures, the allegations set forth in his supplemental brief are deemed "prima facie."  (Dkt. 51).

Defendants filed a response to plaintiff's motion for judgment. (Dkt. 52). Defendants point out that plaintiff's "supplemental brief" was filed as part of his motion to amend the complaint on September 16, 2008 and defendants' filed a timely response to this motion. (Dkt. 41, 49). When defendants filed their response to plaintiff's motion for judgment, the Court had not yet ruled on plaintiff's motion to amend. Thus, defendant argues that entering a judgment against defendants for failing to deny allegations contained in a document that has not officially been accepted by the Court as an amendment or supplement to the initial complaint does not make sense. (Dkt. 51). Further, defendant argues that plaintiff has moved for judgment under Rule 54(b), which is the inappropriate rule under which to request such relief. In reply, plaintiff claims that he never received any response to Dkt. 41 or any of the recent amendments to the complaint. (Dkt. 53).

## III.   DISCUSSION

### A.   Plaintiff's Motion for Judgment

As a preliminary matter, the undersigned recommends that plaintiff's motion for judgment be denied as moot. Defendants timely answered plaintiff's motion to amend the complaint. (Dkt. 49). The Court entered an order denying plaintiff's motion to amend the complaint on November 6, 2008. (Dkt. 55).

Report and Recommendation
Motion for Summary Judgment; Motion for Judgment
*Friske v. Scutt*; 07-13747

Plaintiff filed an objection on November 25, 2008.  (Dkt. 57).  This order denying the motion to amend was affirmed by Judge Rosen on December 11, 2008.  (Dkt. 58).  Thus, to the extent that plaintiff seeks any relief based on the supplemental brief attachment to his September 16, 2008 motion to amend, it is entirely moot.

      B.      <u>Legal Standards</u>

           1.      Summary judgment

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *Fed.R.Civ.P. 56(c)*.  In considering a motion for summary judgment, the evidence and all reasonable inferences must be construed in favor of the nonmoving party.  *Tanner v. County of Lenawee*, 452 F.3d 472, 477 (6th Cir. 2006).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for [his] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [he] believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to

find for the non-moving party.  *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 1769, 127 S.Ct. 1774, 1776 (2007).

> 2.      Failure to state a claim.

While defendants' motion is entitled a motion for summary judgment, they clearly are seeking dismissal of plaintiff's eighth amendment claim based on his amended complaint.  Thus, the undersigned will address the applicable standards for a motion to dismiss.  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which

it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 2007, 127 S.Ct. 1955, 1964 (2007), quoting, *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502, F.3d 545, 548 (6th Cir. 2007), quoting, *Twombly*, at 1964-65 (citations and quotation marks omitted).

And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.*, quoting, *Twombly*, at 1965 (internal citation and quotation marks omitted); *see also, League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

The Sixth Circuit recently recognized that in *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197 (2007), "a case decided just two weeks after *Twombly*, the Supreme Court clarified *Twombly* by holding that a prisoner bringing a § 1983 claim against his captor is not required to state [s]pecific facts in their complaint;

and *Twombly* itself suggests that its holding may be limited to cases likely to produce sprawling, costly, and hugely time-consuming litigation." *U.S. v. Ford Motor Co.*, 532 F.3d 496, 503 n. 6 (6th Cir. 2008) (internal citations and quotation marks omitted). The Sixth Circuit applied a more stringent pleading standard in *U.S. v. Ford* because a fraud claim was involved, which requires the application of the heightened pleading standard set forth in Rule 9(b), rather than the more liberal pleading standard found in Rule 8(a)(2). Such is not the case here. Thus, when applying *Twombly*, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson v. Pardus*, 127 S.Ct. at 2200 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at issue.).

      3.    Injunctive relief

The availability of injunctive relief is a procedural question that is governed by federal law. *Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98 (6th Cir. 1991). The Sixth Circuit has held that a court must consider four factors in deciding whether to issue a preliminary injunction:

1.   whether the movant has established a substantial likelihood or probability of success on the merits;

2.   whether the movant has demonstrated a threat of irreparable harm;

3.   whether the issuance of a preliminary injunction would cause substantial harm to others; and

4.   whether the public interest is served by the issuance of an injunction.

*Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000), overruled on other grounds, *729, Inc. v. Kenton Co. Fiscal Court*, 515 F.3d 485 (6th Cir. 2008). "'The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003), quoting, *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001).

A plaintiff must always, however, show irreparable harm before a preliminary injunction may issue. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 104 (6th Cir. 1982). Further, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n. 3, (6th Cir. 1984); *Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). And, a party seeking injunctive relief bears a heavy

burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See e.g.*, *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

### C.   Merits of Plaintiff's Claims for Injunctive Relief

#### 1.   Access to courts

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Significantly, "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (*en banc*). To state a claim for unconstitutional denial of access to courts, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). Further, an inmate must make a specific claim that he was adversely affected or that the litigation was

prejudiced. *Johns v. MDOC*, 2008 WL 4712360, *5 (W.D. Mich. 2008), citing,

*Vandiver v. Niemi*, 1994 WL 677685, at *1 (6th Cir. 1994).  Courts in this circuit

have held that an inmate cannot show injury when he fails to state that he cannot

replicate the confiscated documents.  *Johns*, at *5, citing, *Vandiver*, at *1.

Plaintiff's claims are, oddly enough, nearly identical to those asserted, and

rejected, in *Hudson v. Caruso*, 2007 WL 2363308 (W.D. Mich. 2007) (internal

citations omitted:

> Plaintiff claims only that he was attempting to order
> "some legal material pertaining to the UCC."  Plaintiff
> describes the document seized on November 14, 2004, as
> "a letter to the clerk of the court, 3rd Judicial Circuit
> Court in which plaintiff requested specific delegations of
> congressional authority pertaining to U.S. incorporation
> and commercial claims with federal statutes over an ENS
> Legis etc in order to begin the litigation aspect of the
> procedure." And, on November 22, 2004, Plaintiff claims
> that the following property was seized: "security
> agreements, hold harmless indemnity agreements, private
> agreements, default letter to the director P. Caruso, and
> at least 50 pages of information ...." .

District Judge Gordon Quist concluded, in *Hudson*, that the plaintiff "does not

allege, nor can this Court discern, how the seizure of those documents resulted in

actual injury to a non-frivolous criminal appeal, habeas corpus application, or civil

rights claim." *Id.*

Plaintiff's denial of access to courts claim is highly unlikely to succeed on the merits for two primary reasons.  First, just as in *Hudson*, the litigation in Oakland County Circuit Court is wholly unrelated to any direct criminal appeal, a habeas corpus application, or a civil rights claim.  Thus, under *Thaddeus-X*, plaintiff's claim fails.  Second, plaintiff cannot show any injury given that he attached copies of the "confiscated" legal materials to his response to the motion for summary judgment.  Under *Vandiver*, plaintiff cannot show the requisite injury given that he obviously was able to replicate the documents at issue.  Plaintiff, therefore, cannot state a claim for violation of his right of access to the courts and cannot succeed on the merits for purposes of obtaining injunctive relief.

##### 2.    Retaliation

While plaintiff's retaliation claim is a bit muddled, he appears to allege that, in retaliation for the grievance he filed regarding the refusal to mail certain legal documents (the UCC-related filings), his cell was searched, his legal papers were confiscated, and he was transferred to another correctional facility.  Retaliation based on a prisoner's exercise of his or her constitutional rights violates the Constitution.  *Thaddeus-X*, 175 F.3d at 394.  A First Amendment retaliation claim requires a plaintiff to establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary

firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Further, plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Johns*, at *6, citing, *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). Such "retaliation" is easy to allege and can seldom be demonstrated by direct evidence. *Johns*, at *7, citing, *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); Indeed, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Such conclusory allegations of retaliatory motive "with no concrete, relevant particulars" fail to raise a genuine issue of fact for trial. *Johns*, at *7, quoting, *Salstrom v. Sumner*, 1992 WL 72881, at *1 (9th Cir. 1992).

In this case, both in his complaint and in his response to defendants' motion for summary judgment, plaintiff merely alleges the ultimate fact of retaliation in this action. He fails to present any facts to support his conclusions. At best, it can only be shown that plaintiff's cell was searched, that copies of his UCC documents were destroyed, and that he was transferred to another facility. Plaintiff fails to allege any pertinent and specific facts to support the claim of retaliation. Plaintiff, therefore, cannot state a claim for retaliation and his speculative allegations are highly unlikely to succeed on the merits.

D.    Irreparable Harm and Interests of the Parties and the Public

Although the burden to show "irreparable harm" in the absence of immediate injunctive relief is quite heavy, "in those cases which involve First Amendment matters, the crucial inquiry is typically whether the plaintiff has demonstrated a substantial likelihood of success on the merits." *Hamilton's Bogarts, Inc. v. State of Mich.*, 2006 WL 334278, *2 (E.D. Mich. 2006); *Spoons v. Morckel*, 314 F.Supp.2d 746, 753 (N.D. Ohio 2004). As set forth above, plaintiff has not met his heavy burden of showing that he is likely to succeed on the merits.

Moreover, "abusive practice of prisoners filing baseless liens and/or UCC financing statements for the purpose of harassment and credit impairment of the alleged debtor (almost always a state or federal official involved with securing the prisoner's incarceration) is well documented." *Marr v. Caruso*, at *4, citing cases; *see also*, *Hudson v. Caruso, supra.*[2] Plaintiff's claims are no different that those

---

[2] On September 28, 2006, District Judge Denise Page Hood entered an Order enjoining the enforcement of subparagraph (HH)(23) of MDOC Policy Directive 05.03.118 (effective January 1, 2006). *Jones v. Michigan Dep't of Corrections*, 2006 WL 2805643 (E.D. Mich. 2006). Judge Hood enjoined enforcement of this particular provision on the ground that it was impermissibly vague. Judge Hood subsequently made clear, however, that the injunction applied only to subparagraph (HH)(23) and that prison officials retain the authority to prohibit mail for any other legitimate purpose. *Jones v. Michigan Dep't of Corrections*, 2007 WL 2875179 at * 3-4 (E.D. Mich. 2007). In the instant case, the notice of intent to conduct an administrative hearing specifically referred to

deemed meritless in countless cases and the potential for abuse is obvious. Moreover, as Judge Quist pointed out in *Hudson*, there is no "competent authority supporting [an inmate's] right to contract under the UCC during his incarceration." *Id*. at *6.

Defendants have also submitted under seal numerous examples of fraudulent liens (based upon the Uniform Commercial Code) filed against Michigan prison and judicial officials. (Dkt. 25). As noted above, plaintiff submitted copies of the materials he claims were improperly confiscated and the undersigned observes that many of the examples of fraudulent liens submitted by defendants were effected by the completion and filing of a UCC Financing Statement, similar to that provided by plaintiff. It is well-established, as set forth above, that prisoners use the UCC and UCC-related materials to perpetrate fraud and harassment against government and prison officials. It is equally well-established that the MDOC's "legitimate penological purpose in preventing such behavior cannot seriously be questioned." *Marr*, at *5. The policies pursuant to which the documents in question were confiscated "represent a rational means by

---

paragraph D-7 of policy directive 05.03.118, which provides that inmates may not possess materials that could be used to conduct a business, not subparagraph (HH)(23), which was the subject of the injunction. (Dkt. 25, Ex. A-1).

Report and Recommendation
Motion for Summary Judgment; Motion for Judgment
*Friske v. Scutt*; 07-13747

which to achieve the legitimate goal of preventing prisoners from engaging in such fraudulent and illegal behavior." *Id*.

Based on the foregoing, the undersigned suggests that injunctive relief under these circumstances weigh strongly against defendants' interests and the public interest. All four factors of the test for injunctive relief weigh in against plaintiff and in favor of defendants. Simply, plaintiff has not met his heavy burden of establishing an entitlement to injunctive relief and defendants' motion for summary judgment should be granted.

E.    Due Process

As noted by the Supreme Court, "even if a state decision does deprive an individual of life or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated the individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284 n.9 (1980). Where an inmate receives "notice and an opportunity to challenge the deprivation of his materials; that is all the Constitution requires." *Carlton v. Fassbender*, 996 F.2d 1214, 1993 WL 241459 (6th Cir. 1993), citing, *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). There is no dispute that plaintiff was given notice and an opportunity to be heard regarding the confiscation of legal materials. Thus, the undersigned suggests that it is highly unlikely that plaintiff will succeed on the merits of this claim and that

defendants are entitled to summary judgment on this claim.  *See e.g. Marr v. Caruso*, 2008 WL 4426340, *6 (W.D. Mich. 2008) (Where plaintiff acknowledges that he received notice of the decision at issue and was given the opportunity to heard on the matter, defendants were entitled to summary judgment on due process claims.).

     F.    <u>Eighth Amendment</u>

The Supreme Court has recognized the responsibility of the courts "to scrutinize claims of cruel and unusual confinement." *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981).  In *Farmer v. Brennan*, 511 U.S. 825, 861 (1994), the Supreme Court explained:

> Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," ... a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities" ....
>
>        * * *
>
> The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." ... To violate the Cruel and Unusual Punishments Clause, a prison officials must have a "sufficiently culpable state of mind." ... In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety.

*Id.* The undersigned agrees with defendants' that nothing in plaintiff's complaint supports a finding that confiscating contraband, fraudulent, UCC-type documents could possibly pose a serious risk to his health or safety. Thus, the undersigned suggests that plaintiff cannot show that his eighth amendment claim is remotely plausible and based on *Twombly* and *Pardus*, *supra*, the undersigned suggests defendants are entitled to a dismissal of plaintiff's eighth amendment claim.

## IV.   RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that defendants' motion for summary judgment on plaintiff's request for injunctive relief be **GRANTED**, that defendants' motion for summary judgment on plaintiff's due process claim be **GRANTED**, that plaintiff's eighth amendment claim be **DISMISSED**, and that plaintiff's motion for judgment under Rule 54(b) be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d

505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

s/Michael Hluchaniuk

Date: February 2, 2009

Michael Hluchaniuk
United States Magistrate Judge

Report and Recommendation
Motion for Summary Judgment; Motion for Judgment
*Friske v. Scutt*; 07-13747

## <u>CERTIFICATE OF SERVICE</u>

     I certify that on <u>February 2, 2009</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Christine M. Campbell</u>.  I also certify that I have mailed, by United States Postal Service, the foregoing paper to the following non-ECF participants:  <u>William Friske, Jr., # 236923, Parnall Correctional Facility, 1790 E. Parnall, Jackson, MI 49201-7139</u>.

<u>s/James P. Peltier</u>       
Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
pete_peltier@mied.uscourts.gov

Report and Recommendation
Motion for Summary Judgment; Motion for Judgment
*Friske v. Scutt*; 07-13747
